UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY JACO,<br><br>  Plaintiff,<br><br>  v.<br><br>WINCO HOLDINGS, INC.,<br><br>  Defendant. | No. 1:18-cv-00301-DAD-EPG<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 63) |

This matter is before the court on the motion for summary judgment filed by defendant WinCo Holdings, Inc. ("WinCo"). (Doc. No. 63.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendant's motion was taken under submission on the papers. (Doc. No. 64.) For the reasons explained below, the court will deny defendant's motion.[1]

/////

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. That situation has now been partially addressed by the U.S. Senate's confirmation of a new district judge for this court on December 17, 2021. Nonetheless, for over twenty-two months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants. Unfortunately, that situation sometimes results in the court not being able to issue orders in submitted civil matters within an acceptable period of time. This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel. (*See* Doc. No. 69.)

1

**BACKGROUND**

This case concerns whether defendant WinCo acted in a discriminatory manner when it terminated plaintiff Shirley Jaco ("plaintiff" or "Jaco"), who suffers from a physical disability.

On January 26, 2018, plaintiff filed this action against defendant in the Stanislaus County Superior Court. (Doc. No. 1 at 21.) On March 2, 2018, defendant removed the action to this federal court pursuant to 28 U.S.C. §§ 1332, 1441 on the grounds that diversity jurisdiction exists. (*Id.* at 6.)

The facts set forth below are based on the parties' submission of the joint statement of material facts ("JF"), which also includes plaintiff's alleged material facts and defendant's responses submitted thereto. (Doc. No. 66-1.) Because defendant is moving for summary judgment, the evidence regarding plaintiff's disability, how that disability contributed to plaintiff's conduct at her job, what defendant knew about plaintiff's disability, and how defendant responded to what it knew is all critical to the resolution of the pending motion. Below, the court will summarize all of the relevant evidence before it on summary judgment. The facts are undisputed unless otherwise noted.

In 2005, plaintiff began work for defendant WinCo at one of defendant's stores in Modesto, California. (JF at 1.) Plaintiff worked as a cashier for defendant beginning in 2007 and continued in that role until she was terminated at the age of seventy-five on November 25, 2016. (*Id.* at 51, 55.) Sometime in the fall of 2016, plaintiff began suffering from a condition known as urge incontinence. (*Id.* at 19.) Urge incontinence is a physical condition caused by abnormal bladder contractions. (*Id.* at 39.) Those suffering from urge incontinence experience intense urges to urinate followed by involuntary urination. (*Id.* at 39–40.) The parties dispute when plaintiff began suffering from her condition. Plaintiff asserts that she began suffering from urge incontinence before October 15, 2016 (*id.* at 40), whereas defendant argues that plaintiff "repeatedly testified she could not recall the date or even year she experienced urge incontinence." (*Id.* at 40.)

Despite the parties' dispute about when plaintiff began suffering from her condition, the parties do not dispute that on September 18, 2016, plaintiff urinated on herself at work, resulting

1  in a $382.72 walkout. (*Id.* at 41.) A walkout is when a customer proceeds through the check
2  stand and then leaves the store without paying for their purchases. (*Id.* at 38.) A walkout can
3  happen when the cashier does not tender the transaction for debit and instead selects cash/check,
4  causing the electronic payment to not be taken. (*Id.* at 39.) A walkout can also occur when a
5  customer is allowed to walk out of the grocery with items that they did not pay for. (*Id.*) With
6  regard to the September 18, 2016 walkout, plaintiff was attempting to process a check when she
7  felt the urgent need to use the restroom. (*Id.*) She called a "Lead Clerk" named James to relieve
8  her from her duties. (*Id.*) James did not respond promptly, and by the time he arrived at the
9  check-out stand, plaintiff had urinated on herself. (*Id.*) Amidst the confusion, the customer
10 walked out without paying for their groceries. (*Id.* at 42.) On September 22, 2016, defendant
11 issued plaintiff a verbal warning—pursuant to defendant's progressive discipline system—for
12 having an excessive cash discrepancy greater than $30 in a week. (*Id.*) On September 30, 2016,
13 plaintiff experienced a second walkout, totaling $201.25, which plaintiff again attributed to an
14 incident wherein she urinated on herself during a transaction. (*Id.* at 43.) On October 15, 2016,
15 plaintiff was given another written warning based on the September 30 walkout. (*Id.*) That same
16 day, plaintiff alerted her supervisor Layloni Waelbrock to her medical issue and Waelbrock
17 responded that she would "take care of it." (*Id.*) On November 19, 2016, there was a third
18 walkout in the amount of $30.36 at plaintiff's register. (*Id.* at 47.) The parties dispute exactly
19 what caused this walkout, but they appear to agree that some combination of plaintiff's physical
20 and mental distress over her past record of warnings contributed to the event. (*Id.* at 47.) Later
21 that day, plaintiff placed her own money into her till to make up for the cash shortage caused by
22 this walkout. (*Id.* at 48.)

23       On November 20, 2016, plaintiff approached Waelbrock and informed her of what had
24 occurred the previous day. (*Id.*) Waelbrock concluded that plaintiff's conduct of placing her own
25 money into the till constituted "gross misconduct." (*Id.*) As a result, on November 25, 2016,
26 defendant terminated plaintiff for using personal funds to pay for a customer walkout. (*Id.* at 51.)
27 Plaintiff filed a "Grievance Hearing Request Form" with defendant's "Employee Association," in
28 which plaintiff challenged her termination. (*Id.* at 53.) The Employee Association upheld

1 plaintiff's termination.  (*Id.* at 54.)  On December 19, 2016, plaintiff filed a second Grievance

2 Hearing Request Form, appealing the decision of the Employee Association to the "Department

3 Managers Employee Association."  (*Id.*)  On December 22, 2016, the Department Managers

4 Employee Association also upheld plaintiff's termination.  (*Id.* at 55.)

5     Based on the foregoing, plaintiff has asserted five causes of action against defendant in

6 her third amended complaint.  (Doc. No. 33.)  Specifically, plaintiff alleged claims for:  (1)

7 disability discrimination in violation of California Government Code § 12940(a); (2) failure to

8 prevent discrimination in violation of California Government Code § 12940(k); (3) failure to

9 provide reasonable accommodations in violation of California Government Code § 12940(m); (4)

10 failure to engage in the interactive process in violation of Government Code § 12940(n); and (5)

11 wrongful termination in violation of public policy.  (*Id.* at 10–19.)

12     On March 5, 2021, defendant filed a motion for summary judgment in this action, seeking

13 summary judgment on each of plaintiff's alleged claims.  (Doc. No. 63.)  On April 6, 2021,

14 plaintiff filed an opposition to defendant's motion.  (Doc. No. 65.)  Defendant filed its reply on

15 April 13, 2021.  (Doc. No. 66.)

## LEGAL STANDARD

17     Summary judgment is appropriate when the moving party "shows that there is no genuine

18 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

19 Civ. P. 56(a).

20     In summary judgment practice, the moving party "initially bears the burden of proving the

21 absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

22 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party

23 may accomplish this by "citing to particular parts of materials in the record, including

24 depositions, documents, electronically stored information, affidavits or declarations, stipulations

25 (including those made for purposes of the motion only), admissions, interrogatory answers, or

26 other materials," or by showing that such materials "do not establish the absence or presence of a

27 genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

28 Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, as

1    plaintiff does here, "the moving party need only prove that there is an absence of evidence to
2    support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at
3    325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after
4    adequate time for discovery and upon motion, against a party who fails to make a showing
5    sufficient to establish the existence of an element essential to that party's case, and on which that
6    party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.  "[A] complete failure of
7    proof concerning an essential element of the nonmoving party's case necessarily renders all other
8    facts immaterial." *Id.* at 322–23.  In such a circumstance, summary judgment should be granted,
9    "so long as whatever is before the district court demonstrates that the standard for the entry of
10   summary judgment . . . is satisfied." *Id.* at 323.

11        If the moving party meets its initial responsibility, the burden then shifts to the opposing
12   party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*
13   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the
14   existence of a factual dispute, the opposing party may not rely upon the allegations or denials of
15   its pleadings but is required to tender evidence of specific facts in the form of affidavits or
16   admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ.
17   P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773
18   (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for
19   summary judgment.").  The opposing party must demonstrate that the fact in contention is
20   material, i.e., a fact that might affect the outcome of the suit under the governing law. *See*
21   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*
22   *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The opposing party also must demonstrate
23   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
24   the non-moving party. *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d
25   1433, 1436 (9th Cir. 1987).

26        In the endeavor to establish the existence of a factual dispute, the opposing party need not
27   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
28   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

5

trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

Below, the court will consider each of the arguments advanced in support of and in opposition to defendant's motion for summary judgment in light of these standards.

## DISCUSSION

Defendant argues that plaintiff has come forward with no evidence which would allow a reasonable fact finder to rule in plaintiff's favor as to any of her claims. (Doc. No. 63-1.) The court will address each of plaintiff's claims in turn.

**A.     Plaintiff's Disability Discrimination Claim**

California's Fair Employment and Housing Act ("FEHA") prohibits employment discrimination on the basis of physical disability and medical condition. *Gardner v. Fed. Ex. Corp.*, 114 F. Supp. 3d 889, 896 (N.D. Cal. 2015); Cal. Gov't Code § 12940(a).

In order to succeed on a claim for disability discrimination under FEHA, a plaintiff must allege and show that: (1) plaintiff suffers from a disability; (2) plaintiff is otherwise qualified to do her job; and (3) plaintiff was subjected to an adverse employment action because of her disability. *Alejandro v. ST Micro Electronics, Inc.*, 129 F. Supp. 3d 898, 907 (N.D. Cal. 2015) (citing *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (1997)). The parties in this case do not appear to dispute that plaintiff suffered from a disability in the form of her urge incontinence.

1  Nor do the parties dispute that plaintiff was otherwise qualified to do her job as a cashier. The
2  court will therefore address only the third element of plaintiff's disability discrimination claim:
3  whether plaintiff was fired because of her disability.
4        Where there is no direct evidence of discrimination, California courts analyze disability
5  discrimination claims under a three-prong burden shifting framework set forth in *McDonnell*
6  *Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th
7  317, 354–55 (2000). Under the first prong, plaintiff must make a *prima facie* showing of
8  disability discrimination. *Id.* If plaintiff succeeds in establishing a *prima facie* case, the burden
9  of production shifts to defendant to articulate a legitimate, non-discriminatory reason for the
10  adverse employment action. *Gardner*, 114 F. Supp. 3d at 896. "If the defendant does so, the
11  plaintiff moves to step three to demonstrate that the defendant's articulated reason is a pretext for
12  unlawful discrimination 'by either directly persuading the court that a discriminatory reason
13  likely motivated the employer or indirectly by showing that the employer's proffered explanation
14  is unworthy of credence.'" *Id.* (quoting *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d
15  654, 658–59 (9th Cir. 2002)). "To establish pretext under step three, very little direct evidence of
16  discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to
17  be 'specific' and 'substantial.'" *Id.* (quoting *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1220
18  (9th Cir. 1998)).
19        1.     <u>Prong One: *Prima Facie* Claim</u>
20        First, the court must determine whether plaintiff has come forward with sufficient
21  evidence to support a *prima facie* claim for disability discrimination, thus satisfying prong one.
22  To establish a *prima facie* claim for unlawful discrimination, plaintiff must provide some
23  evidence suggesting that the adverse employment action taken against her was caused by
24  discriminatory motive. *See Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 584
25  (2016); *see also Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (noting that a
26  "plaintiff must produce evidence sufficient to show that an illegitimate criterion was a *substantial*
27  *factor* in the particular employment decision."). "This step is designed to eliminate at the outset
28  the most patently meritless claims, as where the plaintiff is not a member of the protected class or

was clearly unqualified, or where the job he sought was withdrawn and never filled." *Moore v. Regents of University of California*, 248 Cal. App. 4th 216, 234 (2016).  "The *prima facie* burden is light; the evidence necessary to sustain the burden is minimal." *Id.* at 235 (citation omitted).

In arguing that plaintiff has not provided such evidence, defendant points out that plaintiff has testified to the following:

- She was aware of WinCo's policy prohibiting the placing of personal funds in the till to cover a cash shortage;
- She understood that violating this policy constituted gross misconduct;
- She admitted to placing her own funds in the till to cover a cash shortage;
- She was not aware of any employee being treated differently under similar circumstances;
- No manager or employee ever made disparaging remarks regarding her medical condition; and
- She was not aware of any other employee mistreated because of his or her medical condition.

(Doc. No. 63-1 at 22.)  Defendant advances that, therefore, by plaintiff's own admission, she committed gross misconduct and she cannot make a *prima facie* showing of discrimination.  (*Id.*)

In her opposition to the pending motion, plaintiff argues that the central issue in this case is not whether she violated defendant's policy by using her own money to cover a walkout.  (Doc. No. 65 at 8.)  Rather, plaintiff contends, "the central issue is whether the mistake was caused by Ms. Jaco's disability . . . and WinCo's inexcusable failure to accommodate it."  (*Id.*)  Plaintiff asserts that her "gross misconduct" was caused by her disability, and that because she was fired for said misconduct, she was accordingly fired based on her disability.  (*Id.*)  Plaintiff supports her argument by pointing out that "'[t]he link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.'" (*Id.*) (quoting *Fulfer v. Winco Holdings, Inc.*, No. 1:15-cv-00999-TLN-EPG, 2019 WL 5536326, at *12 (E.D. Cal. Oct. 25, 2019)).  According to plaintiff, the causal link between her disability

8

and her termination is strong in this case because "the November 19, 2016, walkout and her ensuing decision to pay for the loss with her personal funds, were caused by Ms. Jaco's urge incontinence and debilitating fear she would urinate on herself . . .." (*Id.*)

In its reply, defendant mainly repeats its arguments that plaintiff has testified that she understood that her actions constituted gross misconduct. (Doc. No. 66 at 7.) However, defendant also contends that plaintiff's decision to place money in her till could not have been caused by her disability, even if the initial walkout may have been. (*Id.* at 12.)

Based upon the evidence presented on summary judgment, the court finds that plaintiff has initially come forward with sufficient evidence to raise a *prima facie* claim for disability discrimination. A plaintiff alleging disability discrimination can establish the requisite employer intent to discriminate by proving that the employer knew about plaintiff's disability and that "the plaintiff's actual or perceived physical condition was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action." *Wallace v. County of Stanislaus*, 245 Cal. App. 4th 109, 129 (2016). "[A]n employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 887 (2007). "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations." *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1248 (2008) (quoting *Brundage*, 57 Cal. App. 4th at 237). "A supervisor's knowledge of an employee's disability is imputed to the employer because '[a] supervisor is the employer's agent for purposes of vicarious liability for unlawful discrimination.'" *Alejandro*, 129 F. Supp. 3d at 909 (quoting *Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1015 (2004)).

Here, the parties agree that plaintiff informed her supervisor, Layloni Waelbrock, about her medical condition on October 15, 2016. (Doc. No. 66-1 at 29.) The parties dispute, however,

how specific plaintiff was in explaining her disability to her supervisor. For example, plaintiff testified in her February 18, 2021 deposition that she told Waelbrock she was having incontinence problems. (Doc. No. 65-2 at 84.) Waelbrock, on the other hand, testified that plaintiff only informed her that she was wetting her pants, but plaintiff did not clarify that the incidents were caused by a specific condition. (Doc. No. 66-1 at 44.) Given the conflicting testimony, the court concludes that plaintiff has come forward with sufficient evidence from which a jury could find that defendant had knowledge of plaintiff's condition.

Next, the court must determine whether plaintiff has come forward with sufficient evidence to show that defendant acted with a discriminatory motive in light of its purported knowledge of plaintiff's disability. Plaintiff has presented no direct evidence of discrimination. Nevertheless, the circumstantial evidence she advances, when viewed collectively, is sufficient to support a *prima facie* claim for disability discrimination. For example, despite working for defendant for over ten years, plaintiff was terminated only one month after revealing her disability to defendant. *See, e.g.*, *Soria*, 5 Cal. App. 5th at 598 (finding the timing of plaintiff's termination compared to her disclosure to be a relevant factor in showing discrimination).

Moreover, plaintiff has come forward with evidence on summary judgment showing that she was written up for misconduct on at least four occasions during her employment tenure with defendant, and yet only after the fifth time—which occurred after her disclosure of her condition—was she fired. (*See, e.g.*, Doc. No. 66-2 at 39.) The apparent ongoing nature of plaintiff's purported misconduct, which previously led to no adverse action being taken, weighs in favor of a finding that a *prima facie* claim has been made because plaintiff was only terminated after disclosing her disability and allegedly committing a fifth and final violation. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1061–62 (2005) (finding triable issues of fact as to whether proffered reasons for termination were pretextual when complaints about employee were known prior to the protected activity and included in performance reviews, but no employment action had previously been taken).

Finally, defendant has presented no evidence on summary judgment suggesting that plaintiff performed her job poorly. Indeed, plaintiff points to evidence before the court

suggesting that defendant never had any other issues with plaintiff's ability to work. (*See* Doc. No. 66-1 at 35.) Plaintiff's past positive performance could likewise permit a reasonable jury to infer discrimination as the cause for plaintiff's termination. *See Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 930–32 (2014) (finding triable issues of fact to exist when the employee was terminated shortly after engaging in perceived protected activity and the employee had received primarily favorable performance reviews during the previous 10 years of employment).

Based on all of the evidence presented by the parties on summary judgment, the court concludes that plaintiff has asserted a *prima facie* claim for disability discrimination.

### 2. Prong Two: Defendant's Proffered Legitimate Reason for Terminating Plaintiff

Plaintiff's *prima facie* case establishes a presumption of discrimination. *Soria*, 5 Cal. App. 5th at 591. However, an employer may rebut that presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason. *Id.* "If the employer discharges this burden, the presumption of discrimination disappears." *Id.*

The court concludes that defendant has proffered a legitimate reason for terminating plaintiff. Specifically, defendant asserts that plaintiff violated company policy when she placed her own personal money into her till to compensate for a customer who walked out without paying. (Doc. No. 63-1 at 24.) Generally, a violation of company policy serves as a legitimate, nondiscriminatory reason for termination. *See, e.g.*, *Elmore v. New Albertson's, Inc.*, No. 11-cv-04802-ODW-JCx, 2012 WL 3542537, at *4 (C.D. Cal. Aug. 15, 2012). Accordingly, the court turns to consider the third and final prong.

### 3. Prong Three: Pretext

Because defendant has set forth a nondiscriminatory reason for its decision to terminate plaintiff, "the burden shifts to the plaintiff to produce 'substantial responsive evidence' that the employer's showing was untrue or pretextual." *Soria*, 5 Cal. App. 5th at 591 (quoting *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1735 (1994)). Generally, in cases involving affirmative adverse employment actions, pretext may be demonstrated by showing the proffered reason has no basis in fact, did not actually motivate the discharge, or was insufficient

1  to motivate discharge. *Id.* at 594.  "Pretext may also be inferred from the timing of the
2  company's termination decision, by the identity of the person making the decision, and by the
3  terminated employee's job performance before the termination." *Id.* (quoting *Cal. Fair Emp't &*
4  *Housing Comm'n*, 122 Cal. App. 4th at 1023).  A defendant's failure to follow its own policies or
5  procedures may likewise provide evidence of pretext.  *See Moore*, 248 Cal. App. 4th at 239
6  (citing *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)).

7        Here, the court concludes that plaintiff has come forward with sufficient evidence of
8  pretext to survive summary judgment.  As an initial matter, the court notes that "[i]ssues of intent
9  and motive are typically *not* appropriate for disposition on summary judgment." *Moore*, 248 Cal.
10 App. 4th at 241 (citing *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 286 (2009)).  More
11 importantly, for the reasons addressed above, plaintiff has pointed to several factors from which a
12 reasonable jury could rely on to find pretext.  Namely, the timing of plaintiff's termination, her
13 past work performance, and plaintiff's previous alleged mistakes that did not result in adverse
14 employment action.

15       Furthermore, although plaintiff's termination notice does reference her violation of
16 defendant's policy restricting employees from placing their own money in their tills, it also
17 references "previous disciplinary action" taken against her.  (*See* Doc. No. 65-2 at 145) ("Shirley
18 has received previous disciplinary action.")  This reference to "previous disciplinary action"
19 would appear to refer to the September 18 and September 30, 2016 walkout incidents, both of
20 which resulted in plaintiff receiving warnings.  (Doc. No. 66-1 at 6.)  Both of these incidents were
21 supposedly caused at least in part by plaintiff's urge incontinence.  Although defendant did not
22 learn of plaintiff's medical condition until October 15, 2016, its reference to these events in
23 plaintiff's termination notice could suggest to a reasonable jury that defendant was post-hoc
24 punishing plaintiff due to her disability.  *See, e.g.*, *Humphrey v. Memorial Hospital Ass'n*, 239
25 F.3d 1128, 1139 (9th Cir. 2001) ("conduct resulting from a disability is considered to be part of
26 the disability, rather than a separate basis for termination.").  Evidence provided by plaintiff on
27 summary judgment suggests that by the time she was terminated, defendant certainly did know
28 that some of those past instances of alleged misconduct were in fact caused in part by plaintiff's

urge incontinence condition. (*See* Doc. No. 66-1 at 43.)  How much those past disciplinary warnings factored into plaintiff's termination remains open to interpretation based on the evidence submitted on summary judgment.  Nonetheless, by the transitive property, a jury could conclude that plaintiff's disability caused her past instances of alleged misconduct, that defendant knew plaintiff's alleged misconduct was caused by her disability, and that defendant therefore terminated plaintiff in part based on her disability.  In sum, viewing this evidence in the light most favorable to plaintiff, as the court must at summary judgment, the court cannot definitively conclude that defendant's purported reason for terminating plaintiff was not mere pretext for terminating her in fact due to her disability.

For the aforementioned reasons, defendant's motion for summary judgment will be denied as to plaintiff's disability discrimination claim.

**B.     Plaintiff's Failure to Provide Reasonable Accommodation Claim**

FEHA makes it an unlawful employment practice "[f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."  Cal. Gov't Code § 12940(m).  In order to succeed on her reasonable accommodation claim, plaintiff must allege and show that she suffers from a physical or mental disability, that she is a qualified individual, and that defendant failed to reasonably accommodate plaintiff's disability.  *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000).  Ordinarily, an employee is responsible for requesting accommodation for his or her disability, unless the employer itself recognizes that an employee has a need for such accommodation.  *Brown v. Lucky Stores*, 246 F.3d 1182, 1188 (9th Cir. 2001).  The reasonableness of an accommodation is generally an issue for the jury.  *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 954 (1997).

In its pending motion, defendant argues that plaintiff has failed to identify a reasonable accommodation she requested or an instance where she informed defendant that any requested accommodation was denied.  (Doc. No. 63-1 at 25.)  Defendant also contends that it responded to plaintiff's disability, citing Waelbrock's proclamation that she would "take care of it" in response to plaintiff's concerns.  (*Id.* at 26.)  Defendant asserts that Waelbrock spoke with lead cashiers

about timely responding to restroom break calls and listened in on radio calls to ensure timely responses thereto. (*Id.*) Lastly, defendant argues that it had no reason to understand why any further response or accommodation was needed because plaintiff never identified any deficiencies in Waelbrock's response to her report. (*Id.* at 27.)

In her opposition, plaintiff argues that even if defendant implemented some sort of accommodation plan, defendant took no action to enforce that plan or to ensure it was carried out, "as demonstrated by the undisputed fact that on November 19, 2016, no one responded to Jaco's call for a restroom break." (Doc. No. 65 at 27.) According to plaintiff, "[t]he duty to reasonably accommodate a disabled employee is a continuing one that is not exhausted by one effort; rather it extends beyond the first attempt at accommodation and continues where the employer is aware that the initial accommodation is failing and further accommodation is needed." (*Id.* at 28.)

In reply, defendant argues that plaintiff's "cursory communication" with her supervisor regarding her urge incontinence was not sufficient to trigger an interactive process obligation or any further accommodations. (Doc. No. 66 at 17.) Moreover, defendant argues that even if plaintiff's communication conveyed a need for accommodation, "[p]laintiff does not identify any failure to accommodate attributable to WinCo." (*Id.* at 18.) According to defendant, plaintiff's argument that defendant did nothing to enforce its accommodations is unsupported because "[i]t is undisputed Waelbrock listened in on radio calls to ensure they were being timely responded to . . .." (*Id.*)

The court finds plaintiff's arguments in this regard to be persuasive. Although defendant argues that plaintiff never requested additional relief nor complained about the accommodation offered to her, the court notes that plaintiff never had the opportunity to do so. Indeed, as far as the court can tell from the evidence on summary judgment, plaintiff was terminated after the first- and only-time defendant's accommodation failed her. Plaintiff has testified that she did not receive relief in time to use the restroom on November 19, 2016, which led to a walkout. (Doc.

/////

/////

/////

14

No. 66-1 at 47.)[2]  Plaintiff was then terminated from her job six days later. (*Id.* at 51.) Defendant provides no evidence suggesting that plaintiff needed accommodations prior to the November 19 incident. Defendant's contentions that plaintiff could have complained or suggested further accommodations are thus unpersuasive.[3] Moreover, defendant's assertions that Waelbrock spoke to lead clerks, coordinated with the assistant manager, and listened to the radio monitor for breaks likewise fall short. (Doc. No. 66-1 at 45.) Even if defendant had implemented such accommodations to relieve plaintiff, defendant's accommodations evidently failed on November 19, 2016 when—as evidence on summary judgment suggests—no lead clerk assisted plaintiff in time to avoid her accident. (*Id.* at 47.) Courts in California have found that a "single failure to reasonably accommodate an employee may give rise to liability, despite other efforts at accommodation." *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 969 (2014), *as modified on denial of reh'g* (Dec. 23, 2014). Thus, despite defendant's claim that it implemented a plan of accommodations, a failure to enforce those accommodations could give rise to a cognizable failure to accommodate claim. After all, an employer's accommodation must be both reasonable and *effective*. *See Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 799 (N.D. Cal. 2015). Here, plaintiff has pointed to evidence before the court on summary judgment showing that she was not properly assisted by a lead clerk when she reported an urgent need to use the restroom on November 19. (Doc. No. 66-1 at 47.) An accommodation cannot be considered to be effective when it goes unenforced, as plaintiff contends occurred here. Defendant's

/////

/////

---

[2] The parties dispute whether plaintiff's disability was the cause of the November 19, 2016 walkout. (*See* Doc. No. 66-1 at 47.) Indeed, plaintiff appears to have testified both that the incident was caused by her urge incontinence and that it was caused by her panicking about her past record of having received warnings. (*Id.*) Despite this apparent contradiction, the court concludes that there is sufficient evidence offered on summary judgment supporting plaintiff's version of the incident. As the court must view all facts in the light most favorable to the non-moving party—here, plaintiff—the court analyzes plaintiff's claim based on her testimony that her disability caused this walkout.

[3] For instance, when would plaintiff have made such complaints before she had the opportunity to experience defendant's accommodations?

motion for summary judgment will therefore be denied with respect to plaintiff's failure to accommodate claim.[4]

## C. Plaintiff's Interactive Process Claim

Under the FEHA, it is unlawful for an employer to "fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee [with a disability.]" Cal. Gov't Code § 12940(n). The duty to engage in the interactive process is triggered once an employer "becomes aware of the need to consider an accommodation." *Scotch v. Art. Inst. of Cal.*, 173 Cal. App. 4th 986, 1013 (2009); *see also Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 974 (2008) (observing that the employee need not affirmatively request a specific accommodation to prompt the duty to engage in the interactive process). Unless the employee's "disability and resulting limitations are obvious," she has primary responsibility for initiating the interactive process by "'specifically identify[ing] the disability and resulting limitations, and suggest[ing] the reasonable accommodations.'" *Scotch*, 173 Cal. App. 4th at 1013 (ellipsis omitted) (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)). However, the employee need not use "magic words" and the interactive process should be initiated as soon as the employer "becomes aware of the need to consider an accommodation." *Id.* at 1013 (quoting *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 62 n.22 (2006)). Once this duty is triggered, the FEHA requires that the employer engage in an informal process with the employee to attempt to identify a reasonable accommodation that would allow her to

---

[4] Defendant cites the decision in *Goos v. Shell Oil Co.*, No. 07-cv-6130-CRB, 2010 WL 1526284, at *12 (N.D. Cal. Apr. 15, 2010) for the unremarkable proposition that "[a]n employer cannot accommodate an employee's disability if it does not know how that disability affects the employee." (Doc. No. 63-1 at 27.) In *Goos*, the plaintiff failed to keep her employer informed as to what she remained capable of doing and also obstructed her employer's attempts to learn the details of her disability. *Goos*, 2010 WL 1526284, at *10. Moreover, the district court in *Goos* determined that plaintiff "[sued] Defendant on the grounds that Defendant was unable to guess at her capabilities, or was otherwise unable to convince her or her doctor to disclose those capabilities." *Id.* at *12. Of course, the situation the district court confronted in *Goos* is distinguishable from the one here because in this action plaintiff *has* come forward with evidence that she informed defendant of her condition and thus did keep defendant informed as to her remaining work capabilities.

16

perform the job effectively. *See id.* at 1013 (observing that "[r]itualized discussions are not necessary"); *see also Wilson v. County of Orange*, 169 Cal. App. 4th 1185, 1195 (2009). "Finally, when assessing a claim for failure to engage in the interactive process, courts isolate the cause of the breakdown, assign responsibility, and then hold the employer liable only if responsible for the breakdown." *Rezvan v. Philips Electronics N.A. Corp.*, No. 15-cv-04767-HSG, 2016 WL 8193160, at *5 (N.D. Cal. Dec. 15, 2016) (citing *Nadaf-Rahrov*, 166 Cal. App. 4th at 985).

With respect to plaintiff's interactive process claim in this case, defendant makes similar arguments as it does with respect to plaintiff's failure to accommodate claim. (Doc. No. 63-1 at 28.) Specifically, defendant argues that plaintiff "did not request an accommodation, identify any work impairment, and when WinCo nonetheless responded, she never gave WinCo any notice that its response was insufficient." (*Id.*) Defendant points out that after her October 15, 2016 conversation with Waelbrock, plaintiff supposedly "never had another conversation with Waelbrock to communicate that [defendant's] response was not effective or that she needed any further response or action from WinCo." (*Id.* at 29.) Accordingly, defendant concludes, "any breakdown in the interactive process was admittedly Plaintiff's (not WinCo's) fault." (*Id.*)

The court first notes that to the extent defendant argues that plaintiff did not identify her disability or her need for an accommodation, those arguments are unpersuasive. As discussed above, plaintiff has come forward with evidence on summary judgment suggesting that she did put defendant on notice of her disability and that defendant was aware that some accommodation was likely necessary. Furthermore, defendant's arguments that plaintiff never alerted her supervisors to any shortcomings regarding the accommodations made by defendant likewise fall flat. For example, defendant cites the decision in *Department of Fair Empl't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 743 (9th Cir. 2011) for the proposition that the failure to bring to an employer's attention any possible accommodation that it had not considered constitutes a failure on the part of *plaintiff*—not defendant——to interact adequately. (Doc. No. 66 at 19.) But, as discussed above, the evidence before this court on summary judgment suggests that plaintiff never was provided the opportunity to engage in interactive discussions because she was

17

terminated from her job less than a week after the accommodations provided to her allegedly first failed to adequately address her disability. Accordingly, there is a dispute of material fact regarding whether defendant was on notice of plaintiff's need for additional accommodation. A reasonable jury could resolve those disputes in plaintiff's favor, and could also plausibly find that that this information triggered defendant's "continuous" obligation to engage in the interactive process. *See Scotch*, 173 Cal. App. 4th at 1013. Ultimately, as other courts have concluded, the court "cannot as a matter of law, at this stage, isolate the breakdown of the interactive process or determine which party was to blame, so summary judgment is not warranted." *Rezvan*, 2016 WL 8193160, at *5 (citing *Nadaf-Rahrov*, 166 Cal. App. 4th at 985).

Defendant's motion for summary judgment will therefore also be denied with respect to plaintiff's interactive process claim.

**D.     Plaintiff's Failure to Prevent Discrimination Claim**

The parties appear to agree that plaintiff's failure to prevent discrimination claim is derivative of plaintiff's disability discrimination claim. (*See* Doc. Nos. 63-1 at 29; 65 at 30.) Because the court will deny summary judgment with respect to plaintiff's disability discrimination claim, so too will it deny defendant's motion for summary judgment in its favor as to plaintiff's failure to prevent discrimination claim.

**E.     Plaintiff's Wrongful Termination Claim**

The parties similarly appear to agree that plaintiff's wrongful termination in violation of public policy claim is derivative of plaintiff's disability discrimination claim. (*See* Doc. Nos. 63-1 at 29; 65 at 31.) Once again, because the court will deny summary judgment with respect to plaintiff's disability discrimination claim, so too will it deny defendant's motion as to plaintiff's wrongful termination claim.

**F.     Punitive Damages**

Finally, defendant seeks an order from this court summarily denying plaintiff's claim for punitive damages on the ground that "there is no evidence . . . that WinCo engaged in malice or oppression . . . ." (Dc. No. 63-1 at 30.)

/////

In opposition to this request, plaintiff argues that "'if a plaintiff is able to establish intentional discriminatory conduct, that plaintiff would by definition have satisfied the requirement for showing the 'reckless inference' required for an award of punitive damages.'" (Doc. No. 65 at 31) (quoting *Ortiz v. Pacific*, 973 F. Supp. 2d 1162, 1187 (E.D. Cal. 2013)). Thus, plaintiff avers, "if the [c]ourt finds that Ms. Jaco has provided sufficient evidence to survive summary judgment on her FEHA claims, it should decline to dismiss her punitive damages prayer." (*Id.* at 32.)

Punitive damages may be recovered "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). The "clear and convincing evidence" standard "requires a finding of high probability so clear as to leave no substantial doubt; sufficiently strong to command the unhesitating assent of every reasonable mind." *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009) (internal quotation marks and ellipsis omitted). However, the "clear and convincing evidence" standard "does not impose on a plaintiff the obligation to 'prove' a case for punitive damages at summary judgment . . . though the higher evidentiary standard must be taken into account." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009). Lastly, "[i]n the usual case, the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, 'since the degree of punishment depends on the peculiar circumstances of each case.'" *Id.* (quoting *Hannon Engineering, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981)); *see also Capote v. CSK Auto, Inc.*, No. 12-cv-02958-JST, 2014 WL 1614340, at *12 (N.D. Cal. Apr. 22, 2014) (same).

Having reviewed the evidence presented by both parties on summary judgment, the court cannot conclude that no reasonable jury could find clear and convincing evidence that defendant

acted with "willful and conscious disregard" of plaintiff's rights or inflicted "cruel and unjust hardship" upon her "in conscious disregard" of her rights.  *See* Cal. Civ. Code. § 3294(c)(1)-(2).  Rather, the court concludes that this case is an example of the typical case, "in which an assessment of whether Plaintiff's evidence can clear the high bar necessary to recover punitive damages must await the presentation of a full factual record at trial."  *Rezvan*, 2016 WL 8193160, at *11 (citing *Spinks*, 171 Cal. App. 4th at 1053).

## CONCLUSION

For all of the reasons set forth above, defendant's motion for summary judgment (Doc. No. 63) is denied in its entirety.  The matter is referred back to the assigned magistrate judge to re-schedule dates for a Settlement Conference, Final Pretrial Conference, and Jury Trial.

IT IS SO ORDERED.

Dated:   **February 20, 2022**                     _Dale A. Drozd_
                                                                        UNITED STATES DISTRICT JUDGE